UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LESLIE COLEMAN,

        Plaintiff,

v.

METROPOLITAN GROUP PROPERTY
AND INSURANCE COMPANY, SETH FRY,
AND NORWALK POLICE DEPARTMENT,

        Defendant.

_____/

Case No. 18-12030

Honorable Nancy G. Edmunds

**OPINION AND ORDER GRANTING IN PART DEFENDANTS SETH FRY AND
NORWALK POLICE DEPARTMENT'S MOTION FOR SUMMARY JUDGMENT [30],
DISMISSING DEFENDANT NORWALK POLICE DEPARTMENT, AND DENYING
PLAINTIFF'S REQUEST TO AMEND**

This matter is before the Court on Defendants Seth Fry and Norwalk Police
Department's Motion for Summary Judgment. (ECF No. 20.) Plaintiff did not file a timely
response. The Court granted Plaintiff's request for an extension to respond and Plaintiff
filed a response. (ECF Nos. 28, 29, 30, 31, 33, 37.) The Court heard this motion on June
26, 2019.

I.     **Background & Facts**

This action arises out of a motor vehicle accident on October 18, 2017. (Police
Report, Defs.' Mot. Ex. B, ECF no. 30-3.) The accident took place on Edsel Ford Service
Drive at Brush Street. Plaintiff Leslie Coleman had picked up his three grandchildren from
school and they were on their way to pick up Plaintiff's daughter at work when the accident
occurred. (Coleman Dep. 32, Pl.'s Resp. Ex. D, ECF no. 37-5.) Plaintiff reported that he

was driving west-bound on Edsel Ford Service Drive at Brush Street with a green traffic signal when he was struck by Defendant Seth Fry's vehicle, which disregarded a red traffic signal. (Police Report 10/18/2017, Defs.' Mot. Ex. B, ECF no. 30-3.) Plaintiff testified in his deposition that he was sitting at the red light, waiting for the light to change and when the light changed, he proceeded to "take off" and out of his peripheral vision he saw "the car that was to [his] left make a sharp quick turn, and that's when [he] noticed the car coming through the red light." (Coleman Dep. 33, ECF no. 37-5.) Defendant Seth Fry was traveling north-bound on Brush, and reported that he had a green traffic signal, when he was struck by Plaintiff's vehicle, traveling west-bound on Edsel Ford Service Drive, and which had disregarded a red traffic signal. (Police Report, ECF no. 30-3.) A witness, Mr. Cunningham, reported that he was traveling west-bound on Edsel Ford Service Drive behind Plaintiff's vehicle when he saw Plaintiff's vehicle get struck. Cunningham reported that the traffic signal for the west-bound traffic (Cunningham and Plaintiff) was green. (Police Report, ECF no. 30-3.) At the time of the accident, Defendant Fry was an on-duty police officer for the Norwalk, Ohio Police Department. (Police Report, ECF no. 30-3.)

EMS vehicles and a police car came to the accident scene. (Coleman Dep. 43.) Plaintiff did not speak to the EMS workers at the scene, but Plaintiff's grandchildren went by ambulance to the hospital. (*Id.* at 45, 48.) Plaintiff did not go to the hospital via ambulance; he rode with the tow truck to take the vehicle he had been driving back to his mother's house. (*Id.* at 46.) Once at his mother's house, Plaintiff called his fiancé for a ride and his fiancé wanted to take him to a hospital. (*Id.* at 47.) Instead, Plaintiff went home and laid down, reporting that he was "shook up and hurting" and had a doctor appointment coming up within a few days, so he would see his doctor then. (*Id.* at 48.)

The injuries Plaintiff claims as a result of this car accident are injuries to his left lower back, left knee and left ankle. (*Id.* at 51.) Plaintiff testified that at a doctor's appointment a few days after the car accident, he reported that he had been in an accident and that the left side of his back and his left knee were bothering him. (*Id.* at 49.) During that visit he was referred for a nerve test and an MRI was ordered of the lower, lumbar back. (*Id.* at 49-50.) He testified that the nerve testing showed pinched nerves and that the results of the MRI were "not too good" and involved the L3 and L4-5 disks. (*Id.* at 50-51.) The January 8, 2018 MRI revealed degenerative changes to the lumbar spine, as well as "moderate size broad-based right paramedian to interforaminal disc herniation [at L3-L4] which is leading to further effacement upon the ventral thecal sac undersurface of the exiting right L3 nerve root and right L4 nerve root within its lateral recess" and "moderate size broad-based right paramedian to interforaminal disc herniation which is leading to further effacement upon the ventral thecal sac and undersurface of the exiting right L5 nerve root and right S1 nerve root within its lateral recess." (Jan. 8, 2018 MRI Final Report, Pl.'s Resp. Ex. B, ECF no. 37-3.) A January 2, 2018 x-ray of the left knee revealed no fracture, dislocation or bony destruction and, aside from patellar spur formation, was "otherwise unremarkable." (Defs.' Mot. Summ. J. Ex. G, ECF no. 30-8.) According to Plaintiff, following the accident, he treated at The Pain Center and On Point for physical therapy. (Coleman Dep. 52-53.)

Defendants' medical expert opined that a "copied" MRI report of the left knee brought by Plaintiff revealed a "moderate sized longitude and horizontal tear involving the lateral meniscus as well as degenerative changes." (Report of Jack D. Lennox, D.O., F.A.O.A.O., Jan. 4, 2019, Pl.'s Resp. Ex. C, ECF no. 37-4.) Defendant's medical expert also opined that none of the injuries he reviewed were sustained in the October 2017 motor vehicle

accident. (Lennox Report, Defs.' Mot. Summ. J. Ex. H, ECF no. 30-9.) The expert opined

that the mild degenerative arthritic changes shown by x-ray predated the motor vehicle

accident. (*Id.*) The medical expert concluded that Plaintiff would have no restrictions on

work as a result of the motor vehicle accident, was currently able to drive, and did not

require assistance for personal activities of daily living or household help. (*Id.*)

Plaintiff testified that before the accident, he did the maintenance around his home

and cut the grass. (Coleman Dep. 8.) After the accident he no longer cuts the grass and

has a friend perform the maintenance around his home. (*Id.*) He used to do his own

laundry, but since the accident he cannot carry all of the laundry at once without it putting

a strain on his back. (Coleman Dep.59-60.) Prior to the accident, one of Plaintiff's hobbies

was "tinkering with cars." (Coleman Dep. 55.) Since the accident he had only tried to work

on one car, and that resulted in "a lot of pain." (Coleman Dep. 56.) At the time of the

deposition, Plaintiff was using a cane. He testified that the cane is related to the motor

vehicle accident, was prescribed by a pain doctor, and that he has to use it when his back

flares up. (Coleman Dep. 60-61.) He testified that he did not use a cane or other assistive

device in the year prior to the motor vehicle accident.[1] (Coleman Dep. 60.)

Plaintiff brings the following claims: breach of contract against Defendant MetLife

(count I); uninsured/underinsured motorist coverage against MetLife (count II); negligence

against Defendants Fry and Norwalk Police Department (count III); and seeks declaratory

---

[1]Plaintiff's counsel further alleges that after the accident, Plaintiff was not able to "play guitar", despite also including a notation that this was due to the theft of the guitar. (Pl.'s Resp. 9, ECF no. 37; Coleman Dep. 55-56.) At his October 2018 deposition, Plaintiff testified that the guitar was stolen approximately three years earlier, which would have been before the motor vehicle accident. (Coleman Dep. 56.) There is no evidence that Plaintiff stopped playing guitar as a result of the accident or injuries rather than the theft.

relief (count IV). The uninsured/underinsured motorist benefits claims were dismissed by stipulation and without prejudice. (ECF no. 19.)

## II.    Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving party may meet that burden "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

When the moving party has met its burden under rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party must present some evidence in support of its complaint to defeat a motion for summary judgment, and show that a genuine issue for trial exists—i.e., that a reasonable jury could return a verdict for the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co.*, at 587 (citing *First Nat. Bank of Ariz. v. Cities Servs. Co.*, 391 U.S. 253, 289 (1968)). Ultimately a district court must determine whether the record as a whole presents a genuine issue of material fact, *id.* at 587, drawing "all justifiable

inferences in the light most favorable to the non-moving party." *Hager v. Pike Cnty. Bd. Of Educ.*, 286 F.3d 366, 370 (6th Cir. 2002).

## III. Analysis

### A. Whether the Norwalk Police Department Is Capable of Being Sued

Under Michigan law, a police department is subsumed within the municipal entity and the municipal entity is the proper party to be sued; therefore, the Norwalk Police Department is improperly included as a defendant. *See Boykin v. Van Buren Twp.*, 479 F.3d 444, 450 (6th Cir. 2007) ("under Michigan law, Van Buren Township Police Department is subsumed within Van Buren Township as a municipal entity to be sued under § 1983, and thus the Police Department was improperly included as a separate defendant in [the plaintiff's] suit"); *see also Laise v. City of Utica*, 970 F.Supp. 605, 608 (E.D. Mich. 1997) (a city police department is not a legal entity against whom suit can be brought and is not a proper defendant in a section 1983 lawsuit). Norwalk is an Ohio city. Ohio law on the subject is consistent with those cases cited by Defendant involving Michigan municipalities. *See e.g.*, *Hale v. Vance*, 267 F.Supp.2d 725, 737 (S.D. Ohio 2003) ("[T]he City of Trotwood Police Department, being a mere arm of the City of Trotwood, is not its own entity, and is not capable of being sued (i.e., it is not *sui juris*)"); *Elkins v. Summit County, Ohio*, 2008 WL 622038, at *6 (N.D. Ohio Mar. 5, 2008) ("Administrative units of a local government, such as a municipal police department, are not *sui juris* because they lack the power to sue, and cannot be sued absent positive statutory authority."). The Court grants Defendants' motion for summary judgment on this issue and dismisses the Norwalk Police Department.

Plaintiff in his Response brief admits that "Defendant is correct in that Defendant Norfolk Police Department is improperly named," that he should have named the City of Norwalk instead of the police department, and "requests leave to amend contemporaneously with this response to correct these textual defects." (Pl.'s Resp. 10, ECF no. 37.) The Sixth Circuit has noted that "[a] request for leave to amend 'almost as an aside, to the district court in a memorandum in opposition to the defendant's motion to dismiss is . . . not a motion to amend.'" *C & L Ward Bros., Co. v. Outsource Solutions, Inc.*, 547 Fed. Appx. 741, 745 (6th Cir. 2013) (citing *La. Sch. Emps.' Ret. Sys. v. Ernst & Young, LLP*, 622 F.3d 471, 486 (6th Cir. 2010)). Although not a basis for the Court's denial, it is worth noting that Plaintiffs did not comply with the Local Rule 15.1 in seeking to amend their pleading, and have not provided a proposed amended complaint.

Plaintiff argues that he is entitled to have claims against the City of Norwalk "relate back" to the original filing date in Wayne County Circuit Court because the proposed claims against the City of Norwalk arose from the same "conduct, transaction or occurrence set out . . . in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). Rule 15(c)(1)(C) further provides that the pleading relates back if subpart "B" is satisfied and if "within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment: (i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C). Plaintiff points out that the City of Norwalk was served with the original summons and complaint on June 11, 2018, and "clearly" hired counsel to investigate and

defend the claims brought against the police department, so the city will not suffer any prejudice.

The more pressing concern is that Defendants' counsel actually notified Plaintiff's counsel of this issue approximately eight months ago, and Plaintiff did not act to correct the parties. On August 14, 2018, Defendants' counsel forwarded a letter via email to Plaintiff's counsel, in which Defendants' counsel explained that the police department is not a proper party and sought concurrence in dismissing same, asking Plaintiff's counsel whether she "would be willing to enter a stipulated order dismissing the Norwalk Police Department from this litigation as a Defendant." (Defs.' Mot. Ex. I, ECF No. 30-10.) On August 14, 2018, the same day the request was sent, Plaintiff's counsel responded in an email of a single line: "Let me review and get back to you." (Defs.' Mot. Summ. J. Ex. I, ECF no. 30-10.) Seven months later, Defendants, with no concurrence from Plaintiff, briefed the issue with their motion for summary judgment.

Federal Rule of Civil Procedure 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." The Sixth Circuit has held that "where a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice." *U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 644 (6th Cir. 2003) (citation omitted). "Denial may be appropriate, however, where there is 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by

virtue of allowance of the amendment, futility of the amendment, etc.' " *Id.* (citation omitted).

Discovery was initially due by November 15, 2018. (ECF no. 5.) On November 20, 2018, the parties stipulated to extend the discovery deadline to February 15, 2019. (ECF no. 23.) Had Plaintiff moved to amend his complaint last August when the defect was initially brought to counsel's attention, the City could have been added as a Defendant months before the passing of either the first or the amended discovery deadlines. Plaintiff demonstrated undue delay in amending his complaint and the Court denies his request. Further, as set forth below, such an amendment is futile. The Court grants Defendant's motion to dismiss the Defendant police department and denies Plaintiff's request to amend the complaint to add the city as a party.

## B. Governmental Immunity

As set forth above, the Court dismisses Defendant Norwalk Police Department. Because Plaintiff has asked to amend his complaint to add the City of Norwalk as the proper defendant instead of the police department, the Court will analyze governmental immunity with respect to the City of Norwalk. One of the things the Court may consider when considering amending of pleadings is whether Plaintiff's amendment would be futile. *U.S. ex rel. Bledsoe,* 342 F.3d at 644. "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Riverview Health Institute LLC v. Medical Mutual of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010) (citation omitted). The Court considers immunity as to the City of Norwalk and Defendant Fry.

"Except as otherwise provided in this act, a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function." *See* Mich. Comp. Laws § 691.1407(1).  Governmental immunity applies to "each officer and employee of a governmental agency" where the following are met: "(a) The officer [or] employee, . . . is acting or reasonably believes he or she is acting within the scope of his or her authority", . . . (b) "[t]he governmental agency is engaged in the exercise or discharge of a governmental function" and . . . (c) "[t]he officer's, (or) employee's, . . . conduct does not amount to gross negligence that is the proximate cause of the injury or damage." Mich. Comp. Laws § 691.1407(2). As an initial matter, there is no dispute that the proposed defendant City of Norwalk is a "political subdivision," as defined under Mich. Comp. Laws section 691.1401(d) and (e), and therefore a governmental agency. *See* Mich. Comp. Laws § 691.1401(a), (e).

"[A] governmental agency is immune unless the Legislature has pulled back the veil of immunity and allowed suit by citizens against the government." *Mack v. City of Detroit*, 649 N.W.2d 47, 52 (Mich. 2002), *superseded in part on other grounds by Costa v. Cmty. Emergency Med. Servs., Inc.*, 716 N.W.2d 236 (Mich. 2006)). "A plaintiff pleads in avoidance of governmental immunity by stating a claim that fits within a statutory exception or by pleading facts that demonstrate that the alleged tort occurred during the exercise or discharge of a nongovernmental or proprietary function." *Mack*, 649 N.W.2d at 57; *see also Hannay v. Department of Transp.*, 860 N.W.2d 67, 76 (Mich. 2014) ("when a party files suit against a governmental agency, it is the burden of that party to plead 'his or her claim in avoidance of governmental immunity.'") The operation of a motor vehicle is one such

statutory exception. *See e.g., Hardy v. County of Oakland*, 607 N.W.2d 718, 720 (Mich. 2000). The vehicle exception to the governmental immunity act provides that "[g]overnmental agencies shall be liable for bodily injury and property damage resulting from the negligent operation by any officer, agent, or employee of the governmental agency, of a motor vehicle of which the governmental agency is owner, . . . ." Mich. Comp. Laws § 691.1405.

Defendants argue that "Plaintiff has failed to plead facts that would allow his claims to fall outside the scope of the City of Norwalk Defendants' governmental immunity" and "has failed to even reference such immunity within his complaint." (Defs.' Mot. 9, ECF no. 30.) As Plaintiff points out, no one has identified legal authority requiring the magic words "governmental immunity" to state a claim that would fit within a statutory exception to governmental immunity. And while Plaintiff could certainly have put a little more flesh on the bones of the complaint, the complaint makes clear that Plaintiff sustained injuries in a motor vehicle collision (Compl. 9, 18, 25, 26) which occurred on October 18, 2017, and involved Defendant Fry (Compl. 5), that Plaintiff operated one of the vehicles in the collision, that Defendant Fry was the "driver" of another vehicle involved in the collision (Compl. 22), that Defendant Police Department owned the vehicle Fry was driving (Compl. 23), that Defendant Fry collided with Plaintiff (Compl. 5), and alleges that Defendants owed Plaintiff certain duties of care, enumerated in the complaint, and that Plaintiff's injuries were the result of the negligence of Defendants Fry and Police Department (Comp. 24, 25). The Court finds that Plaintiff's initial pleadings meet the minimum standards necessary to plead in avoidance of statutory immunity.

**C. Whether Plaintiff Has Shown Evidence Sufficient To Create A Question Of Fact As To Whether The Motor Vehicle Accident Was Caused By Defendant Fry's Negligence or Gross Negligence**

Defendants argue that Plaintiff cannot sustain the burden of showing that Defendant Fry's October 18, 2017 actions were grossly negligent. (Defs.' Mot. 22, ECF no. 30.) Gross negligence is defined as "conduct so reckless as to demonstrate a substantial lack of concern for whether injury results." Mich. Comp. Laws § 691.1407(8)(a).

The police report shows that both Plaintiff and Defendant Fry reported proceeding through the traffic signal with a green light. Witness Cunningham reported that he and Plaintiff had a green light, contradicting Defendant Fry's report. (Police Report, ECF no. 30-3.) Plaintiff points out that there is no evidence that Defendant Fry had activated his emergency lights prior to the accident. (Pl.'s Resp. 20.) There exists a question of fact whether Defendant Fry proceeded through a red light at the traffic signal.

The negligence standard necessary to overcome governmental immunity of the governmental agency who owns the motor vehicle differs from that necessary to overcome the governmental immunity of the employee/officer. *See Bermudez v. Capital Area Transp. Auth.*, Dkt. no. 275067, 2007 WL 4553626, at *7-8 (Mich. Ct. App. Dec. 27, 2007). The standard for the conduct that must be shown to avoid governmental immunity for the employee or officer's conduct is gross negligence. Governmental immunity is available to an officer or employee who, among other requirements, has engaged in conduct that "does not amount to gross negligence that is the proximate cause of the injury or damage." Mich. Comp. Laws § 691.1407(2)(c) (emphasis added). The motor vehicle exception provides that "Governmental agencies shall be liable for bodily injury and property damage resulting

from the negligent operation by any officer, agent, or employee of the governmental agency, of a motor vehicle of which the governmental agency is owner, . . . ." Mich. Comp. Laws § 691.1405 (emphasis added).

For Plaintiff to avoid governmental immunity with respect to the liability of employee/officer Defendant Fry, he must show that Defendant Fry's conduct was grossly negligent; to avoid governmental immunity with respect to the liability of the governmental agency (the not-yet-a-party City of Norwalk) it is only necessary for Plaintiff to show that the employee/officer Defendant Fry operated the vehicle in a negligent manner. A case relied on by Defendants for other purposes supports this analysis. *See Hardy v. County of Oakland*, 607 N.W.2d 718, 719 (Mich. 2000) (The Michigan Supreme Court noted in recitation of the background of the case that "for present purposes, it is settled that the deputy was negligent, but not grossly negligent, and that his inattention caused the accident." The deputy was not a party to the case and the case specifically addressed the issue of "whether the threshold requirements for pursuing a tort remedy for noneconomic damages under the no-fault insurance act are applicable when the defendant is a governmental agency being sued under the vehicle exception to the governmental immunity act.").

Defendants argue that Plaintiff fails to plead facts that would allow claims to fall outside the Defendants' governmental immunity. Defendants rely on several cases to argue that Plaintiff has not proven that Defendant Fry's conduct was grossly negligent, yet those cases are distinguishable from the case at bar and none involves proceeding through a red traffic signal, an issue for which Plaintiff has shown a material question of fact exists.

*See e.g., Poppen v. Tovey*, 664 N.W.2d 269, 274 (Mich. App. 2003) (governmental agency's vehicle was not being "operated" as a motor vehicle at the time of the accident, and the defendant driver was not grossly negligent, even if the statute at issue had "placed a duty on [the driver] not to block the road, the presumption arising from its violation is merely one of ordinary negligence, not gross negligence, and is insufficient to create a genuine issue of material fact preventing summary disposition."); *Maiden v. Rozwood*, 597 N.W.2d 817, 824 (Mich. 1999) (allegation of gross negligence against Department of Community Health, facility and employees when attempts to restrain a resident resulted in death; "[E]vidence of ordinary negligence does not create a material question of fact concerning gross negligence. Rather, a plaintiff must adduce proof of conduct 'so reckless as to demonstrate a substantial lack of concern for whether an injury results.'"); and *Tarlea v. Crabtree*, 687 N.W.2d 333, 340 (Mich. App. 2004) (Where a high school student died during a pre-season football conditioning camp, the court concluded that "no reasonable trier of fact could conclude, on the basis of the evidence presented to the trial court, that defendants displayed 'conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results.'").

A jury could find that running a red light constitutes gross negligence due to the inherent risks of the same. *See e.g., Branyon v. Lynn-Park Fields*, Dkt. no. 305994, 2013 WL 163812, at *4 (Mich. Ct. App. Jan. 15, 2013) ( "A jury could find this action constituted gross negligence because of the inherent risks involved in running a red light, particularly while driving a bus transporting several people.")*; Beydoun v. Wills*, Dkt. no. 304729, 2013 WL 2224272, at *4 (Mich. Ct. App. May 21, 2013) ("[T]he trial court did not abuse its

discretion by denying defendant's motion for a new trial on the basis that the verdict was against the great weight of the evidence. There was competent evidence showing that [Defendant Officer] was negligent. The video of the accident and testimony from [Defendant Officer and others] confirm that [Defendant Officer] ran the red light. There was also competent evidence that [Defendant Officer] did not properly activate his siren or lights; . . . ."); *Goodson v. Suburban Mobility Authority for Regional Transp.*, Dkt. nos. 253375, 253376, 2005 WL 1123892, at *4 (Mich. Ct. App. May 12, 2005) ("Whether conduct in proceeding through a busy intersection against a red light, into the path of an oncoming bus, is conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results is a factual question to be decided by the jury. Plaintiffs therefore established a genuine issue of material fact regarding whether Gray was grossly negligent."). There exists a question of material fact regarding whether Defendant Fry proceeded through a red traffic signal and, if so, acted negligently, and/or was grossly negligent in so doing.

> In any negligence case, including one involving a government actor's gross negligence, a court must determine whether 'the defendant's negligence was a cause in fact of the plaintiff's injuries ....' The court must also assess proximate cause, that is, legal causation, which requires a determination of whether it was foreseeable that the defendant's conduct could result in harm to the victim.

*Ray v. Swager,* 903 N.W.2d 366, 372 (Mich. 2017). Further, in assessing whether the "governmental employee was 'the proximate cause' of the plaintiff's injuries, a court must determine whether the defendant's conduct was 'the one most immediate, efficient, and direct cause of the injury...." *Id.* at 372. Plaintiff has presented evidence from which

reasonable jurors could determine that running a red light was "the one most immediate, efficient and direct cause preceding an injury." *Id.*; and *Goodson*, 2005 WL 1123892, at *4.

### D. Whether Plaintiff Has Shown An Actionable Threshold Injury

#### 1. Has Plaintiff Shown An Objectively Manifested Impairment

Defendants argue that Plaintiff has failed to show an actionable threshold injury. Plaintiff is "required to meet the no-fault thresholds . . . in order to prevail in his suit for noneconomic damages" caused by the governmental employee's negligence. See *Hardy*, 607 N.W.2d at 720 ("the restrictions set forth in the no-fault act control the broad statement of liability found in the immunity statute"). Michigan's No-Fault Insurance Act, Mich. Comp. Laws § 500.3101 *et seq.* (the "No-Fault Act"), provides that Plaintiff can maintain an action for "noneconomic loss caused by his . . . use of a motor vehicle only if the injured person has suffered death, serious impairment of a body function, or permanent serious disfigurement." Mich. Comp. Laws § 500.3135. A "serious impairment of body function" means an objectively manifested impairment of an important body function that affects the person's general ability to lead his or her normal life. *See* Mich. Comp. Laws § 500.3135(5).

The no-fault act also provides that

(a) The issues of whether the injured person has suffered serious impairment of body function or permanent serious disfigurement are questions of law for the court if the court finds either of the following:

(i) There is no factual dispute concerning the nature and extent of the person's injuries.

(ii) There is a factual dispute concerning the nature and extent of the person's injuries, but the dispute is not material to the determination whether the person has suffered a serious impairment of body function or permanent serious disfigurement.

Mich. Comp. Laws § 500.3135(2)(a). The Court could find that this case falls into either of these sub-parts. As discussed below, even if there were factual disputes as to the nature and extent of Plaintiff's injuries, there is a dearth of evidence connecting them to the accident and Plaintiff fails to show that he suffers a serious impairment of body function.

The unambiguous language of MCL 500.3135(7) provides three prongs that are necessary to establish a "serious impairment of body function": (1) an objectively manifested impairment (observable or perceivable from actual symptoms or conditions) (2) of an important body function (a body function of value, significance, or consequence to the injured person) that (3) affects the person's general ability to lead his or her normal life (influences some of the plaintiff's capacity to live in his or her normal manner of living).

*McCormick v. Carrier*, 795 N.W.2d 517, 537 (Mich. 2010). An "objectively manifested impairment is one 'that is evidenced by actual symptoms or conditions that someone other than the injured person would observe or perceive as impairing a body function.'" *Patrick v. Turkelson*, 913 N.W.2d 369, 377 (Mich. Ct. App. 2018)(quoting *McCormick*, 795 N.W.2d at 527). "[M]ere subjective complaints of pain and suffering are insufficient to show impairment." *Id.* at 377. Yet "evidence of a physical basis for that pain and suffering may be introduced to show that the impairment is objectively manifested." *Id.*

Plaintiff underwent an MRI of the lumbar spine on January 8, 2018, which revealed degenerative changes to the lumbar spine, as well as "moderate size broad-based right paramedian to interforaminal disc herniation [at L3-L4] which is leading to further effacement upon the ventral thecal sac undersurface of the exiting right L3 nerve root and

right L4 nerve root within its lateral recess" and "moderate size broad-based right paramedian to interforaminal disc herniation which is leading to further effacement upon the ventral thecal sac and undersurface of the exiting right L5 nerve root and right S1 nerve root within its lateral recess." (Jan. 8, 2018 MRI Final Report, Pl.'s Resp. Ex. B, ECF no. 37-3.) A January 2, 2018 x-ray of the left knee revealed no fracture, dislocation or bony destruction and aside from patellar spur formation, was "otherwise unremarkable." (Defs.' Mot. Summ. J. Ex. G, ECF no. 30-8.) Defendants' medical expert noted that "the patient did bring with him a left knee MRI report that was copied, showing a moderate sized longitude and horizontal tear involving the lateral meniscus as well as degenerative changes." (Lennox Report, Jan. 4, 2019, Pl.'s Resp. Ex. C, ECF no. 37-4.)

Defendants argue that objective testing of the back showed degenerative and pres-existing injuries and that the knee was essentially normal. Defendant also points out that Plaintiff underwent significant treatment to his lumbar back prior to the October 2017 accident, including having injections in 2016 for pain management with Dr. Sayeed Khan. (Meridian Health Record, Defs.' Mot. Ex. D, ECF no. 30-5.) The diagnoses at that time, prior to the accident, were listed as "intervertebral disc disorders with radiculopathy," lumbar region and lumbosacral region, and "low back pain." *Id.* Plaintiff applied for Social Security Disability in 1997 due, in part, to a "bulging disc on the right side" of his back, and that application was approved. (Coleman Dep. 15-16, Pl.'s Resp. Ex. D, ECF no. 37-5.)

Defendants cite several cases from Michigan courts in which the court found that the plaintiff had not established the existence of an objectively manifested impairment arising out of a motor vehicle accident. For example, in *Mehdi v. Gardner*, No. 319630, 2015 WL

1227710 (Mich. Ct. App. Mar. 17, 2015), the Michigan Court of Appeals affirmed the lower court's grant of summary disposition in favor of defendants. Despite objective tests that revealed a bulging spinal disc (an MRI taken approximately 3 weeks after the accident) and nerve abnormalities (a nerve conduction study performed approximately one year after the accident), the "plaintiff presented no evidence that the accident caused these conditions." *Id.* at *2. "The only documented manifestations of plaintiff's injuries directly attributable to the accident were subjective symptoms of neck and back pain, headaches, and a diagnosis of whiplash in November 2011." *Id.* A CT scan taken the evening of the accident showed that the plaintiff's "lower cervical spine exhibited '[m]ild degenerative changes . . . [with] no evidence of acute fracture or subluxation.'" *Id.* at *1. Two physicians had diagnosed the plaintiff with whiplash. *See id.* The court of appeals also noted that there was "no genuine factual dispute concerning the nature and extent of plaintiff's injuries caused by the vehicle accident" therefore there was "no genuine issue of material fact" to prevent the court "from deciding whether plaintiff demonstrated an injury sufficient to satisfy the tort liability threshold for a serious impairment of bodily function." *Id.* at *2 (citing *McCormick*, 795 N.W.2d 517). The court also engaged in "a comparison of the plaintiff's life before and after the incident" and found that plaintiff did not present evidence "showing that his conditions, even if caused by the accident, affected his ability to live his normal life." *Id.* at *2-3 (citing *McCormick*, 795 N.W.2d 517).

Plaintiff predominately cites to two pieces of evidence to support his argument that he suffered objectively manifested injuries to his lumbar spine and left knee: the MRI scan of the lumbar spine, and the Defendant's medical expert's opinion that an MRI of Plaintiff's

left knee revealed a "moderate-sized longitude and horizontal tear involving the lateral meniscus." (Pl.'s Br. 18.) Plaintiff's MRI dated January 8, 2018, post-dates the vehicle accident by nearly three months. Plaintiff provides no evidence that the conditions identified in the MRI were caused by the motor vehicle accident. With respect to the MRI(s) of the knee, referenced in Dr. Lennox's report, there is no date given for the MRI, and the doctor noted conditions degenerative in nature, in addition to the tear involve the lateral meniscus and concluded that Plaintiffs clinical findings were not consistent with this, nor was "the morphology of care consistent with trauma." (Lennox Report, Pl.'s Resp. Ex. C.) Dr. Lennox concluded that "none" of the injuries were sustained in the October 2017 vehicle accident. (*Id.*) It is also noted that Plaintiff describes trips to pain clinics and makes reference to therapy. There is no evidence of this in the record, aside from Plaintiff's testimony at his deposition and a summary comment in Dr. Lennox's report. Plaintiff treated at a pain clinic prior to the accident as well. (Coleman Dep. 25, ECF 37-5.) While Plaintiff argues that "[t]hese injuries did not manifest until subsequent to the collision with Defendant Seth Fry," Michigan courts have held, "[t]hat a condition temporally follows an event is not in itself evidence of causation." *Mehdi*, 2015 WL 1227710, at *2 (citation omitted). The *Mehdi* court found there was no evidence that a bulging disc revealed in an MRI taken three weeks after the accident was caused by the accident. *See id.* Similarly, Plaintiff has not shown evidence to raise a question of fact as to whether the conditions and/or injuries were caused by the accident. The Court finds that Plaintiff failed to present evidence that he suffered an objective injury resulting from the vehicle accident.

**2.  Whether Plaintiff Has Established That An Injury Caused By The Motor Vehicle Accident Affected His Ability To Lead His Normal Life**

Plaintiff must also show that the accident-related injury affects his "general ability to lead his . .  normal life", in other words, it "influences some of the [P]laintiff's capacity to live in his or her normal manner of living." *McCormick*, 795 N.W.2d at 537. The areas in which Plaintiff alleges that his normal life was affected are maintaining the upkeep of his residence, caring for himself, walking freely without assistance, and engaging in his hobby of tinkering with cars. As in *Mehdi*, the Court considers Plaintiff's life before and after the accident. *See e.g., Mehdi*, 2015 WL 1227710, at *3 (citing *McCormick*, 487 Mich. at 202-03). These allegations are based solely on Plaintiff's deposition testimony regarding the areas he alleges are affected:

Q   Who does the maintenance around the home currently?
A   At this present time?
Q   Yes.
A   [. . . ], a friend of mine.
Q   What about prior to this incident?
A   Myself.
Q   Anyone else?
A   No.
Q   So you cut the grass?
A   No.
Q   Who cut the grass before the incident?
. . .
A   I did.
Q   What about take out garbage, stuff like that, before the incident?
A   I did.

(Coleman Dep. 8-9, Pl.'s Resp. Ex. D.)

Q   Any other hobbies other than guitar and tinkering with cars?

A   No.

Q   Have you worked on any cars since this incident?

A   No. I tried.

Q   So you haven't worked on even one car since this incident?

A   One, yes.

Q   When was that?

A   I tried. I paid for it.

Q   So you tried once if I'm understanding you correctly, but you haven't worked on any other ones?

A   No. And I had a lot of pain.

(Coleman Dep. 56, Pl.'s Resp. Ex. D.)

Q   Has any doctor told you you can't vacation since this incident?

A   No.

Q   Has any doctor told you you can't play guitar since this incident?

A   No.

Q   Has any doctor told you you can't do any type of maintenance at all to a car since this incident?

A   I can't pull motors anymore. They say don't lift nothing no more than five pounds.

Q   Who told you that?

A   Doctor, pain doctor.

Q   At Van Dyke?

A   Yes.

( Coleman Dep. 58-59, Pl.'s Resp. Ex. D.)

Q   Have you done any home maintenance at all since this incident?

A   No.

Q   Now, you said you did it all before this incident?

A   Yes.

Q   So you did all the laundry?

A   Yes.

Q   For the whole house?

A    No, just for myself.

Q    Why can't you do it now?

A    Because I can't carry the laundry. It's kind of heavy, it puts a strain on my back, a lot of pressure.

Q    Can you carry a shirt?

A    Oh, yeah.

Q    What about like a pair of pants?

A    Yes.

Q    Okay, It's just you can't carry it all together?

A    Right.

. . .

Q    You've had no issue driving since this incident?

A    No.

Q    Now, I noticed you have a cane today. Do you allege that's related to this incident?

A    Yes.

Q    When did you get the cane?

A    At the time I went to the doctor, the pain doctor.

Q    Okay. Did they give you a prescription for it?

A    Yes. There's another doctor I seen, I can't recall the name. He's out in Southfield. Vital.

Q    Did you ever use a cane in the year prior to this incident?

A    No.

Q    Any types of assistive device at all in the year before this incident?

A    No.

Q    Could you walk without a cane if you needed to?

A    I try sometimes.

Q    So once in a while you will, but you use the cane?

A    When the back flares up, I've got to have it.

(Coleman Dep. 60-61, Pl.'s Resp. Ex. D.) Plaintiff also testified that he still runs his own

errands "when [he] can" and testified that noone helps him out with personal hygiene tasks,

nor has he had any problem with such things since the accident. (Coleman Dep. 62, Pl.'s Resp. Ex. D.)

The evidence on which Plaintiff solely relies is his own testimony- he has not even provided the prescription for the cane. *Cf. Mehdi*, 2015 WL 1227710, at *3 (the plaintiff provided employment records and medical records were available with which to compare the plaintiff's pre-accident activity level, and the plaintiff provided doctor's slips "disabling him from doing housework and driving"; even when the evidence was "viewed in a light most favorable to plaintiff," it did "not establish a genuine issue of material fact that plaintiff's injuries affected his ability to lead his normal life.").

In *Wiedyk v. Poisson*, the trial court granted summary disposition to the defendants in deciding that there was "no evidence that the 2005 accident affected [the plaintiff's] general ability to lead his normal life." *Wiedyk v. Poisson*, 2014 WL 1679061, at *2 (Mich. Ct. App. Apr. 24, 2014) (reversed by *Wiedyk v. Poisson*, 854 N.W.2d 715 (Mich. 2014)). The court of appeals, in reversing the trial court, noted that the plaintiff's affidavit, "if taken by itself and believed, . . . clearly shows that plaintiff's ability to do much of anything important to his life has been negatively affected. The fact that his life prior to the 2005 accident was already significantly degraded is of little importance; making a bad situation worse is compensable." *Id.* at *3. The Supreme Court of Michigan considered the Court of Appeals judgment and concluded that the "trial court was not required to expressly rule on whether the plaintiff's attempt to expand the record on remand with his affidavit was proper," and even if the trial court had considered the affidavit, it did not err in granting

summary disposition for the defendants.  *See Wiedyk*, 854 N.W.2d at 715. In a one-page

decision, the Supreme Court of Michigan stated:

> When considered in light of the record developed in this case, the affidavit's conclusory allegations regarding the extent of the plaintiff's injuries and impairments, nearly all of which the plaintiff suffered prior to the accident in question, were insufficient to create a genuine issue of material fact as to whether the plaintiff's ability to lead his pre-accident lifestyle was impacted by the 2005 accident.

*Id.* at 715. The Court concludes that Plaintiff has not provided evidence to raise a genuine

issue of material fact that his conditions were caused by the accident, nor that they meet

the No-Fault Act threshold and are a serious impairment of body function.

## IV.   CONCLUSION:

For the reasons set forth above, the Court grants Defendant's motion for summary

judgment as follows:

1.  Dismisses Defendant Norwalk Police Department.
2.  Grants summary judgment as to claims against Defendant Fry.
3.  Denies motion to amend complaint to add new party.

**SO ORDERED.**

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated:  July 22, 2019

I hereby certify that a copy of the foregoing document was served upon parties and counsel of record on July 22, 2019, by electronic and/or ordinary mail.

s/Lisa Bartlett
Case Manager